The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first case, the only case before the court this morning is docket number 191883, In Re Publicover. Ms. Nguyen, are you prepared to begin? Yes, Your Honor. You may. Good morning, Your Honors, and may it please the court. My name is Theresa Nguyen of Perkins Coie, Counsel for the Publicover Appellants. This is a case in which the prior art simply does not disclose key limitations of the claims on appeal. The clear absence of those limitations from the references warrants reversal. Venable disclosed that eye trackers and head trackers could be used to determine user intent. Kitterman disclosed that the vestibulo-ocular reflex occurs in the human body. And that is the whole of the relevant disclosures from those references. Neither of them shows how a device would recognize a vestibulo-ocular reflex. They don't mention concurrent head and eye velocities. And they certainly don't show a device using identification of a vestibulo-ocular reflex to determine a user's intent and then acting on that intent. The board's obviousness decision should be reversed because its factual findings are based on misreadings of the prior art. And therefore, they lack substantial evidentiary support. Is it your argument that there's not enough reason or motivation to combine the two prior art references? Or is it your argument that even in combination, even if we assume there's a motivation to combine them, they still don't give us what we need? Dr. Malley, there's primarily a lack of disclosure. And we believe that's the primary issue here. But there's also arguably, there could be framed a lack of motivation to modify argument. Again, the missing limitations are the primary issue. There's no disclosure of identifying a vestibulo-ocular movement. And there's no disclosure of the process of measuring concurrent head and eye movements, head and eye velocities as required. Ms. Nguyen, this is Judge Chen. Just to follow up on Judge O'Malley's question. I heard you say your primary focus is that there's no actual disclosure. But I just wanted to confirm. I did not see anything in your briefing here or your briefing to the board that suggested that there would be no motivation to do any kind of combination of the two references that would result in the claim limitation of identifying vestibulo-ocular movement for the purposes of discerning intent. Is that correct in terms of how I understand a proper reading of the briefing here and below? Yes, Judge Chen. That is correct. What I was explaining was that what the government appears to argue is that there may be some kind of motivation to modify the references and fill in the missing limitations. And what we are explaining is that there's nothing in the prior art to indicate why identifying a vestibulo-ocular movement would be useful to determine the user's intent. And so there would be no motivation to modify the references in that way. Can you show me exactly where in the specification of the 273 application that you think there is the disclosure of the identification that you're referring to such that it would be required in the prior art? Absolutely, Your Honor. There in Figure 4 of the specification, which is on Appendix 176, as well as the corresponding description of Figure 4, which is at pages 87 and 88 of the appendix, paragraphs 222 to 224, there is a detailed description of the algorithm approach that is partially reflected in the claims. So there, there's a description about measuring the relative head and eye velocities as described in the claims and comparing them, determining that they occur at the same time in order to determine that a vestibulo-ocular movement has occurred. But the board expressly found that Kitterman does disclose that comparison, right? So the board did find that, but we argue that the board has misread the reference. The board found that Kitterman teaches that a particular method of detecting head movement and Kitterman also discloses that a vestibulo-ocular movement is one type of head movement. But Kitterman is clear that, first, it's not a head movement, it's an eye movement, because Kitterman used video recordings of the eyes to diagnose brain injuries. And Kitterman noted that under normal conditions, a gaze shift usually comes with a head movement. And what Kitterman said specifically, and this is on page 1707 of the appendix, paragraph 12 of Kitterman is the exact language that it uses. So the body's vestibular system kicks in, the vestibulo-ocular reflex causes the eyes to roll back in the head to stabilize vision with head movement. Kitterman did not discuss how a device would identify that a vestibular-ocular reflex had occurred. It didn't track head movement, and it said nothing about determining that head and eye velocities occur at the same time. Ms. Nguyen, this is Judge Chen again. I was looking at paragraphs 222 to 224, and in terms of trying to find any details on how your disclosed system would identify vestibulo-ocular eye movements, for me it really just boils down to this one sentence, the first sentence in paragraph 224. If the right and left eye move, and this is at A88, if the right and left eye move in the same direction at 436, that's referring to a box of your flow chart, and this direction is opposite the direction of the head at 437 with an approximate correspondence and movement magnitudes, then the eye movement is classified as vestibulo-ocular at 439. But I don't see anything in terms of components, protocols, algorithms, or anything beyond that sentence, which is essentially the definition of vestibular-ocular eye movement that discloses to someone of skill in the arts how your disclosed system would actually go about doing the work of discerning when something is a vestibulo-ocular eye movement. Am I missing something from your specification? No, this is the primary discussion that reflects what's in the claims. But the issue here, Your Honor, is what is the limitations that are described in the claims are not reflected in the prior art. And so because they're not disclosed in the prior art, there can be no finding of obviousness. This is Judge Chen again. I'm sorry, go ahead. Go ahead, Judge Chen. Oh, thank you, Judge Bryson. Ms. Nguyen, as I understand the examiner and the board's thinking here, they seem to look at Venable paragraph 51, which talks about various components you could use to discern user intent. And from paragraph 51, they conclude that Venable, among other things, contemplates using eye trackers and head trackers together. And so therefore, you would be taking into account head movement while tracking eye movement. And so what the board and examiner are saying is you would therefore understand that when the head is moving while you're trying to track what the eye is targeting, you need to compensate for that head movement. And when we look at a reference like Kiderman, Kiderman says that whenever you do some kind of psychotic eye movement of greater than 20 degrees, what's going to accompany that is vestibulo-ocular eye movement. And that obviously involves both head and eye movement together. And so the board therefore found, yes, you would take into account vestibulo-ocular eye movement along with tracking psychotic eye movement since oftentimes they accompany each other. And then you would use that in Venable's eye tracking system to discern user intent. And so what is wrong with that line of thinking? Where in that line of thinking is there something that the board and examiner have done that is really unreasonable to the point that it lacks substantial evidence? Well, first I would disagree that there is a disclosure in Venable or anywhere in the references about using eye and head trackers in the way that the claim requires. There's nothing about using them together, and I'll explain. And then there's nothing about using them to identify vestibulo-ocular reflex. So Venable's system... You can finish your sentence. Venable's system at paragraph 51 talks about using a head tracker, but that is just a component in the input subsystem. It doesn't describe how the head tracker would be used as part of the system. There's no other reference in the entire reference that talks about head trackers at all. Venable's system focused on tracking a user's gaze as it moves from an object to an interactive target. So it's really just focused on tracking the position of an eye movement from one object to another with no disclosure about how a head tracker would contribute to that system. All right. Do you want to save the rest of your time for rebuttal? If I could, I have one follow-up question, just briefly. In your brief, and again, I think today you have argued that Ketterman does not disclose tracking head movements. That's part of your contention, right? Yes, it is. I was looking at paragraph 22 of Ketterman, which incorporates by reference several patent application publications. I looked at those, and those do, in fact, disclose a system that tracks both eye movements and head movements. So, in effect, isn't it the case that Ketterman, by virtue of the incorporation by reference, does disclose a device that is used in the invention and that is capable of head and eye tracking? That may be the case, Your Honor, but Ketterman doesn't disclose how to identify vestibular-ocular movements. So, even if it discusses devices or systems that use both head and eye trackers, there's no discussion of how using that device or any kind of method that a device would use to identify a vestibular-ocular movement. Okay. Okay, we'll save the rest of your time for rebuttal. Is it aptly ready to proceed? Yes, Your Honor. Okay. Thank you. Your Honors, and may it please the Court, substantial evidence supports the Board's determination that the combination of Venable and Ketterman disclose the limitations of Claim 43. And it's probably most helpful to just briefly walk through the support for the limitation focused on by Public Coverage Counsel, which is this identifying the vestibular-ocular movement limitation. This is disclosed by the combination of Venable and Ketterman. Venable discloses the use of head and eye trackers together to discern user intent, and they use these peripherables to identify natural eye movements, giving saccades as one example. So, Venable really discloses most of the claim limitations, the head and the eye trackers together for identifying eye movements like saccades. Ms. Queller, this is Judge Chen. In terms of Venable's teaching, where in Venable is your best quotable quote for using a head tracker and an eye tracker together to track eye movement to discern user intent? Where would that be? So, the Board focused on Paragraph 51, which I think is the most direct statement about using one or more user input devices together. So, that's at the very beginning of Paragraph 51 on Appendix 1700. And then you go to the bottom where it specifically lays out a head tracker, eye tracker, accelerometer, and or gyroscope. So, it includes them together for motion detection and or intent recognition. So, there you have head and eye together for intent recognition. So, I'd say that would be our best quotable quote. What line are you looking at? So, we're on Paragraph 51, and because it's an application, it doesn't have a line, but it's the very bottom of the paragraph, the last four sentences of Paragraph 51 on Appendix 1700. Got it. Ms. Cuellar, when you say that's your best quote, would it also be fair to say that's your only quote? That is what the Board pointed out. Venable is certainly not limited to just that paragraph. So, if you take a look at, for example, Appendix 1697, Paragraph 20, it talks about the input subsystem may include other sources of signals and other inputs, other motion sensors, image sensors. And that's at Paragraph 20, Appendix 1697. Moving even further back, still on Appendix 1697, it's Paragraph 15, but it's right above Paragraph 16. It says, may receive input from any suitable input device configured to provide an updated position signal. So, the entirety of Venable is directed to including inputs from not just eye trackers, but Paragraph 51 is what the Board specifically pointed out because it did discuss head and eye together. Additionally, as the Board pointed out, Venable is directed to saccades, but there's no limitation to it being a head-fixed saccade. And as Titterman explains, when your eyes move at a degree that's greater than 20, the head usually follows in a saccade. So, I'd say that's also implicit in the discussion of saccades of Venable is that it's not limited to head-fixed, as the Board pointed out and Public Cover failed to dispute. So, it also kind of shows how the totality of Venable incorporates the head and the eye together. So, we have Venable that discloses the majority of the claim limitation. The only thing really missing is the specific eye movement called out in the claims, which is the vestibulo-ocular movement. And that's where Titterman comes in, which teaches that vestibulo-ocular eye movements are eye movements related to saccades. So, we have a movement that's related to the very one called out by Venable. Titterman also discloses exactly what vestibulo-ocular reflexes are, that they're the movement of the head and the eyes to keep the gaze on track, and also that they involve the speed and the direction of the head. So, in totality, it would have been obvious to use the known equipment of Venable, as intended for tracking user intent, to identify an eye movement, the vestibulo-ocular movement, that's related to the one that Venable already identified, the saccade. I'd like to address one specific comment made by Public Coverage Council, and also that was emphasized in their reply brief, which is the argument that the prior art fails to measure the velocity, or that the claims require a concurrent velocity. First, any arguments about measuring velocity, we would argue, were raised. They were not addressed in the briefing before the board, and also not apparent from the opening briefs to this court. So, for that reason, we would argue that the specific arguments about measuring or calculating velocity that was emphasized in the reply brief is raised. But also, the claims don't require measuring velocity. So, if you look at the language of the claims, it says, and again, I'm speaking with respect to that identifying limitation that has been emphasized here. And the claims say that you identify whether or not the velocity occurs concurrently. It does not say that the velocity has to be the same. You just have to broadly identify. You don't have to measure. You just have to broadly identify whether velocity is occurring at the same time. So, this is similar to the fact that I can go outside and know that two cars are moving at the same time. I don't have to know what their velocity is. I don't have to measure their velocity. Broadly, according to the claims, I just have to know that they're occurring, that velocity is occurring at the same time. And so, the emphasis today on the measuring of velocity or that the velocity has to be the same, it's simply not supported by the claim limitations in addition to the argument being waived. Based on the broad language of the claims, as I discussed, the combination of Venable and Kitterman disclose the fact that the eyes, that you use an eye tracker and a head tracker to identify a movement, which involves both the speed and the direction of the head and the eyes. I think, unless the panel has any additional questions, I'm prepared to yield the rest of my time. Anything? Okay. That's fine. Thank you. Thank you. How much time is left for rebuttal? Ms. Nguyen has one minute and 30 seconds. Okay. We'll give you four minutes. Thank you, Your Honor. You're welcome. Counsel stated that the claims only require that the velocity is occurring at the same time. And I wanted to bring it back to that portion of the limitation here, the identifying limitation, because that is part of the limitation that the head velocity and the eye velocity occurs concurrently. That's not a textbook definition. And regardless, Kitterman doesn't disclose it. Kitterman disclosed that the human body's vestibular system stabilizes vision and the vestibular ocular reflex is part of that. It disclosed that the eyes move, the head follows more slowly, the eyes roll back in the head. But it's neither explicit nor inherent in that disclosure that the head and eyes move at the same time during a vestibular ocular reflex or that a device could identify a vestibular ocular reflex using the specific parameters as stated in the claim. Was that argued to the board below? In the appeal brief, they did mention that particular portion of the claim. Separately, there's also nothing in the prior art to indicate why identifying a vestibular ocular movement would be useful to determine the user's intent. If I could, reading paragraph 12 of Kitterman, which is the one that describes the vestibular ocular reflex, it does say that as the head follows more slowly, more slowly than the saccade, that the vestibular ocular reflex causes the eyes to roll back in the head to keep gaze on the target. And that seems to me to imply that the eyes are compensating for the head motion to the same extent as is necessary for the eyes to keep focusing on the target, which sounds like it's saying the same velocity. Isn't that so? It may be the same velocity, but it doesn't describe the speeds occurring at the same time. Well, in order to keep the gaze on the target, don't they have to be occurring at the same time? Well, actually, Your Honor, and as the government's brief described at page 12, it could be that the vestibular ocular movement occurs after a saccade initially moves the eyes and after the head follows the eyes. It's not necessarily at the same time, or at least that's not what the disclosure in Kitterman says. Okay. There's also nothing in the prior to indicate why identifying a vestibular ocular movement would be useful to determine the user's intent. And that shows two things. First, that the follow-on limitations to the identifying step are missing here. There's no disclosure of using an identified vestibular ocular movement to confirm that a user is looking at something and to perform an action in response. Those are two additional steps in the claims that are not disclosed in the references. And those steps are key because they show how the vestibular ocular movement is used in the system to determine user intent. There's nothing in the references second to that contains any indication of how or why one of skill in the art would use a vestibular ocular reflex in Venable's method for determining user intent. Venable relied on tracking the position of deliberate shifts in eye gaze from one object to another to signal a user's intent. Nothing in the record reflects any basis for modifying that method by somehow adding in an incidental eye reflex that occurs with head movement. Okay. Thank you for the opportunity to present arguments. Thank you, counsel. The case will be submitted. The honorable court is adjourned from day to day.